George Cerniglia.

-versus-

Cloverlands Dairy Co.

No. 7 9 9 3.

Court of Appeal.

Parish of Orleans.

Dinkelspiel. J.

Dinkelspiel- J.

This controversy, substantially, presents the following
facts.

Plaintiff, owner of a ford auto truck, operated
by him in conjuction and for his business, which was that
of a retail butcher.    That his Driver, one Polizzi,
drove said truck from plaintiff's place of business, in
the early morning hours, between three and four o'clock,
down St. Charles Ave., going down on the river side of the
Avenue, which is the proper way downtown, and that about
that hour the truck, being on St. Charles Ave, between
Toledano and Harmony Streets, and the night being dark,
and driving it at a moderate speed, the driver noticed
a two-mule wagon, the property of the defendant, which
wagon was standing off the curb, headed uptown in a wrong
and illegal position, and on the wrong and illegal side
of the street.

That plaintiff's driver attempted to pass said
wagon by swerving to the left in the accustomed and correct
manner, but the wagon then standing off the curb, was
without a driver, or anyone present, to hold the reins,
or direct the mules;   the mules having been left standing
alone, uncontrolled, undirected, free to wander at will,
started across the street on their own volition, struck
plaintiff's truck, breaking and damaging the front thereof,
running the pole attached to said wagon right into the
said truck, causing damage and injury to it which amounted
to the sum of $ 115.95.

Contending further that it was gross negligence
on the part of defendant's employee to leave the said
two-mule wagon in a frequented street at an early hour,
and the night being dark, alone unattended, uncontrolled,
without anyone to watch over said mules, and it was fur-
ther gross negligence to leave said wagon with the said

457

two mules on the street, exposing any automobile, coming down in their regular and leggl path, to an accident or probable collision, but that said accident was solely and only due to the negligence, imprudence, and want of skill of said defendant company, or its employee, and which was in no way contributed to by any actions on the part of plaintiff or his driver; that had the mules been attended to, or watched over, they would not have crossed the streetp thus causing the damage as set forth; that the cost to repair the damage was the amount stated, and that he paid same, and also, that he was deprived of the use of his truck, which was necessary in his business, and that he had to hire a horse and wagon for twenty-four days, which was the time that his truck was being repaired, and for which he had to pay five dollars a day, or the sum of one hundred and twenty-dollars, which he had paid to the parties he had rented same from.

Wherefore he prayed for judgment for $ 235.95. Annexed to his petition is an itemized statement of the amount of the damage.

The answers of the defendant admits, the allegations of plaintiff's petition, except that said truck was proceeding at a moderate speed, and the amount of the damages alleged, and denies, further, that said mules ran into plaintiff's truck, but avers, that had plaintiff's driver been driving in a lawful manner, that he could have controlled his truck in time to avoid striking the defendants wagon, and that the accident was due solely to the fault and negligence of plaintiff's driver.

In all similar cases of this character, the testimony is always conflicting, but in this case, there are certain portions of the evidence, which we shall refer to, which control this case.

458

The plaintiff himself was not present when this accident occurred, and his testimony is simple as to the damage, and as to the amount ~~of~~ he paid, which is not denied, and also for the hiring of a horse and wagon to carry on his business.

The driver, Polizzi, a witness in this case for plaintiff; " I was coming on St. Charles St., at about twelve miles an hour, I made it my business every time I crossed a cartrack, and just merely rolled over, and after crossing the track proceeded on ten or twelve miles, I saw an automobile truck at Toledano and St. Charles St., about ten feet further on, or possibly twenty feet, then I saw a milk wagon on the gutter edge, facing uptown, and just as I got close to the milk wagon the mules cut across to eat the grass on the neutral ground, and there was nobody in the wagon driving, no weight on the mules, I tried to crowd as much/I as could towards the neutral ground, and if I had gone any **further**, I would have gone against the curb, and the tongue of the wagon hit the truck, and the lamp of the truck, and broke the windshield, and broke the steering wheel, and broke the post."

Q. Describe how the accident occurred, and how the mules came in contact with your wagon ?
A.  The mules were kind of slanting uptown, and all of a sudden, they started to cross the street to eat grass on the neutral ground, and I tried to cut in front to avoid the accident, and when they saw the light, they draged the machine, and broke it up.

Q. Did those mules suddenly dart across the opposite way, or did they leisurely cross the street.
A.  They were already near half way in the street, and I knew I could make it if the mules would stand still.

459

Q.   At the first time when you first saw the wagon, how far from the point where the wagon was where you ?

A. I saw the wagon when I was at the corner of Toledano Street, it was about thirty feet from the corner, and if the mules would have stood still, as they were, I would have made it alright, but there was nobody holding the mules, and it decided to go across and eat the grass, and that is when it happened.

Q. You could stop your car in four or five feet, or maybe six feet, going at twelve miles an hour ?

A. Yes, and if those mules had stood where they were at, I would have had plenty of room to stop, but I did not know they were not going to stand still, I was going about my business, and the mules did not stand, and as I got close to them, they started to cross the street.

Q. You saw the mules moving towards you, you were six or seven feet away ?

A. I did not see the mules moving towards me at all, they were standing still, and they moved and hit me at the same time.

Q. They had to go across a space of eighteen feet before they could hit you ?    A. Eighteen feet.

Q. (By the Court)  Let us get this point straightened out.  When you were at Toledano street, was  this wagon with the mules headed to-wards the neutral ground ?

A. They were kind of slant across the way, in the street, and if they had stood still, or turned this way, they would not have hit the automobile, if they would have stood in their position that they were in.

Alphonse Poret, another witness for plaintiff, he testified that he was on the truck when the collision occurred, was sitting where the wagon hit,  " I was on the right side".

Q. Tell the Court, in a few words what brought on the accident ?

A. We was coming down St. Charles street, ten or twelve miles an hour, and just as we got about to Toledano St., we saw the wagon, but the mules were standing still. We didn't know that the mules was going to pull over or not, and we kept our same gait, and as we got about five feet from the mules, the mules pulled over to the neutral ground, they gave one or two hard jerks, and came right cross to eat grass.

Q. Is it not a fact, that the way the accident happened, was that when you came to Toledano Street you saw these mules and wagon with the mules standing out towards the neutral ground, and with just enough roon for the automobile to go by ?    A. Yes.

Q. They were standing still at that time ?    A. Yes.

Q. Mr Polizzi, did not try to stop at that time ?

A. Before he got any chance to stop the mules drags the wagon and goes across towards the neutral ground.

The law, in reference to the facts, is found in 29 CYC. page 530, reading: " While the negligent act or omission of the person injured ordinarily defeats recovery, the rule is subject to the exception or qualification that, although such person has been guilty of negligence in exposing himself to danger, yet he may recover, if defendant, if knowing of such danger, could have avoided the injury by the exercise of ordinary care, and fails to do so, as in such case of negligence of the person injured, is not the proximate cause of the injury, and the negligence of the defendant becomes the proximate cause.    This rule has no application where the negligence of the person injured, and of defendant, are concurrent, each of which, at the very time that the accident occurs, contributes to it."

461

The learned judge of the lower Court, gave written reasons as follows:

" The plaintiff's driver saw a palpable danger, which he could easily have obviated by stopping and leading the mules to the side of the curb, and then driving past. He, however, diliberately took the risk of driving between the heads of the mules and the neutral ground, trusting to luck that the mules would not move. They did, however, move and the damage resulted. He could not take this risk at the cost of the defendant. He took the risk at his own peril and at his own cost. This was contributory negligence of the grossest kind, and bars recovery."

We concur in the views thus expressed and here quote it.

For the reasons herein assigned, it is ordered, adjudged, and decreed, that the judgment of the lower Court be, and is hereby affirmdd, with costs.

— JUDGMENT AFFIRMED —